# United States District Court
## for the Northern District of Oklahoma

Case No. 21-cv-286-JDR-SH

Corey Atchison,

*Plaintiff*,

*versus*

Robert Jackson; Gary Meek,

*Defendants*.

## OPINION AND ORDER

Plaintiff Corey Atchison served twenty-eight years in prison for a murder he did not commit. He sued Defendants Robert Jackson and Gary Meek for allegedly coercing witnesses and securing his false conviction. This case is set for trial in March 2026. Mr. Jackson and Mr. Meek now seek to bifurcate the trial's liability and damages phases. Dkt. 216.[1] Mr. Jackson and Mr. Meek also seek to exclude the opinions of Mr. Atchison's police practices expert, Joseph Allio. Dkt. 209. Mr. Atchison seeks to exclude portions of the opinions of Defendants' own police practices expert, John Ryan. Dkt. 208. The Court denies both of Defendants' motions and grants in part and denies in part Mr. Atchison's motion.

I

Mr. Jackson and Mr. Meek move to bifurcate the trial's liability and damages phase. Dkt. 216. They argue "the issues of liability and damages are clearly separable" and that a lack of bifurcation "could be unfairly prejudicial

---

[1] All citations use CM/ECF pagination.

No. 21-cv-286

to the defendants" as "the jury will likely have sympathy for the Plaintiff" after hearing "evidence of Plaintiff's damages related to spending 28 years in prison." *Id.* at 2. The Court finds that the Defendants have not shown that this trial merits bifurcation and that bifurcation would be unduly burdensome on the Court's resources. The Court denies the motion.

A

Under Rule 42(b), courts may order separate trials for one or more separate issues or claims "for convenience, to avoid prejudice, or to expedite and economize." The decision lies within the discretion of the trial court, but "the Tenth Circuit has held that courts should not bifurcate trials . . . unless the issues to be bifurcated are 'clearly separable.'" *Blagg v. Line*, No. 09-cv-0703-CVE-FHM, 2012 WL 90439, at *2 (N.D. Okla. Jan. 11, 2012) (quoting *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)). And "separation of issues for trial is not to be routinely ordered." *Angelo*, 11 F.3d at 964. In general, "the presumption is that the plaintiff, in a typical case, should be allowed to present [his] case in the order [he] chooses" and that the defendants have the burden to show bifurcation is necessary. *Patten v. Lederle Lab'ys*, 676 F. Supp. 233, 238 (D. Utah 1987).

The Northern District of Oklahoma recently dealt with a similar motion to bifurcate in another case regarding convictions and a decades-long imprisonment for a crime of which the plaintiffs were innocent. *See Scott v. Tulsa*, 795 F. Supp. 3d 1351, 1356 (N.D. Okla. 2025). In *Scott*, the defendants (including Mr. Meek) sought to bifurcate the trial into separate liability and damages trials. *Id.* The court observed that "evidence of [a] [p]laintiff['s] innocence goes towards proving liability, bolstering [the] [p]laintiff['s] credibility, disproving one of [the] [d]efendants' potential defenses, and increasing damages." *Id.* Furthermore, the court found that because expert testimony would deal with the police standards from the 1990s, "the jury will intuit that the constitutional violations and subsequent harm to [the] [p]laintiffs

No. 21-cv-286

occurred decades ago" and "[t]hus, separating evidence of damages and evidence of constitutional violations would be impractical." *Id.* at 1356-57.

### B

The Court sees little difference between this case and *Scott*. Even taking as true the Defendants' argument that only two witnesses would be able to testify to Mr. Atchison's damages, Mr. Atchison has stated that he will seek to introduce evidence of his innocence at trial. Dkt. 216 at 5; Dkt. 219 at 4. This evidence of innocence "goes towards proving liability," "bolster[s] . . . credibility," supports "disproving . . . potential defenses" and "increas[es] damages." *Scott*, 795 F. Supp. 3d at 1356.

Mr. Atchison states that he intends to introduce evidence of his innocence not solely for his damages calculation but also to support the credibility of multiple other witnesses testifying to liability. Dkt. 219 at 5-6. If he prevails at the liability stage, bifurcation would require him to present that evidence twice, significantly lengthening the total time required for trial. And in contrast to Defendants' arguments that his evidence would be limited to two witnesses, Mr. Atchison states that both Defendants would need to be called a second time, and that he may call other third-party witnesses to testify in each phase. *Id.* at 8.

Mr. Atchison argues bifurcation would further delay proceedings on other issues. The effort to determine what evidence fits in which portion of the trial could very easily descend into a constant flurry of objections, further slowing proceedings and taxing the Court's limited resources. *Id.* at 8-9. The Court agrees.

Defendants argue that however the jury rules, bifurcation will improve judicial economy because there would be significantly lower chance of the damages phase going to trial. Dkt. 216 at 8-9. They argue that there would be no need for testimony about damages if the Defendants prevail on liability, and if Mr. Atchison prevails, it would induce a negotiated settlement. *Id.*

No. 21-cv-286

Although these statements may be accurate, they are also accurate about *every* action seeking damages, and do not sway the Court's perception of the judicial economies in this case. There is a "presumption" that Mr. Atchison "should be allowed to present [his] case in the order [he] chooses" and a factor that is present in every action does not sway the Court to abandon that presumption. *Patten*, 676 F. Supp. at 238. And if the jury were to find the Defendants liable and no settlement agreement could be reached, bifurcation would "needlessly prolong the trial." *Scott*, 795 F. Supp. 3d at 1357.

Defendants also argue that failing to bifurcate would be unduly prejudicial to their case, as a jury might sympathize with Mr. Atchison's twenty-eight-year imprisonment. But "a clear set of jury instructions at trial" more than suffices to minimize and avoid any prejudice stemming from the jury's sympathy. *Scott*, 795 F. Supp. 3d at 1357. The Court will provide a clear set of instructions at trial and will not sacrifice judicial economy when those instructions suffice.

The Court finds that bifurcation would create more problems than it would solve, and the issues Defendants raise are better addressed through jury instructions than the complex and burdensome procedure of bifurcation. The Court denies the Defendants' joint motion for bifurcation [Dkt. 216].

## II

Defendants also move to exclude the opinions of Mr. Atchison's police practices expert, Joseph Allio. Dkt. 209. Defendants argue that Mr. Allio is not qualified to testify as an expert witness in police practices, does not use reliable methods, and any opinions he does have are immaterial to the remaining claims against the Defendants and would be unhelpful to a jury. *Id.* at 1. Defendants then argue that several of Mr. Allio's specific opinions are improper and seek to exclude those as well.

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when:

No. 21-cv-286

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under the *Daubert v. Merrell Dow Pharm., Inc.* standard, the Court must act as a gatekeeper to ensure that a proffered expert witness is both qualified and that the expert's testimony is reliable. 509 U.S. 579, 589 (1993). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-cv-475-GKF-FHM, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert*, 509 U.S. at 589). Initially, the Court must determine "whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). If the expert is qualified, the Court then shifts its focus to "whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Id.* at 1278. A court must find that it is "more likely than not" that each prong of the Rule 702 test is met, and the burden of proof lies with the party offering the expert witness's testimony. Fed. R. Evid. 702.

A

Defendants argue that Mr. Atchison has not shown that Mr. Allio is qualified to opine on generally accepted police practices in homicide investigations, because "[Mr.] Allio does not describe how many homicide cases he worked on, either as a lead detective or assisting" and "[Mr.] Allio has no other qualifications related to homicide investigations." Dkt. 209 at 5.

No. 21-cv-286

Defendants' arguments are unpersuasive and mischaracterize Mr. Allio's credentials. Mr. Allio has 30 years of law enforcement experience, including substantial time spent as a police chief in three different California cities. Dkt. 209-1 at 1-2. He also spent five years as a homicide detective. *Id.* That he did not state the specific number of murder cases he oversaw as chief in those cities or worked on during his time as a homicide detective does not detract from his qualifications. *Id.* at 2. Mr. Atchison has shown beyond a preponderance of the evidence that Mr. Allio is qualified.

Defendants next argue that Mr. Allio's opinions are not reliable because he "does not provide a sufficient analytical basis for his opinions." Dkt. 209 at 6. Defendants' main complaint is that Mr. Allio relies on his own experience and two editions of a homicide investigation manual to produce his report. *Id.* Mr. Atchison points out that this is substantially the same methodology used by the Defendants' own police practices expert and that the analytical basis for Mr. Allio's opinions is his own experience and knowledge. Dkt. 218 at 8.

The Court recognizes that the framing of Rule 702 is better suited for scientific or medical expert testimony than expert testimony about nonscientific topics like police practices, for which the meaning of a "reliable method" is unclear. But Rule 702 does not exclude witnesses from relying on their experience when opining on an issue where that experience is relevant. Mr. Allio states that he reviewed the depositions, trial transcript, preliminary hearing, police reports, various recorded interviews and affidavits, Tulsa Police Department police manuals, and other documents, along with "criminal investigation source material." Dkt. 209-1 at 3. He then "applied [his] knowledge of police procedure and investigative practices, based on [his] training, education, and experience, to the facts and allegations in this case" to render his opinion. *Id.* He also applied academic sources in his analysis. *Id.* at 4. Although there are naturally limitations to the application of Mr. Allio's knowledge of California police procedures and investigative practices to

6

No. 21-cv-286

Oklahoma police investigations, the Court is satisfied that Mr. Allio's methods are more likely reliable than not.

Similarly, Defendants argue that Mr. Allio's report is not "based on sufficient facts and data," without specifying the basis for their allegation. Dkt. 209 at 6. But as just discussed, Mr. Allio reviewed significant portions of the record as part of his analysis and compared them to his own experience and academic texts. Dkt. 209-1 at 3-6. Mr. Atchison has shown by a preponderance of the evidence that Mr. Allio reviewed sufficient facts and data in authoring his report.

Defendants may, of course, cross-examine Mr. Allio on any of these topics to reduce the weight of his testimony in the eyes of the jury. *United States v. Stevenson*, No. CR-21-275-RAW, 2022 WL 4368466, at *2 (E.D. Okla. Sept. 21, 2022).

B

Defendants also argue that, irrespective of his expertise and reliability, Mr. Allio's opinions will not aid the jury. The crux of their argument is that Mr. Allio's opinions speak to "whether there were deviations from generally accepted police practices in the investigation into the murder of James Lane," which is not relevant to Mr. Atchison's remaining claims for fabrication of evidence, *Brady* violations, and malicious prosecution. Dkt. 209 at 3-4. Defendants argue that Mr. Allio's testimony will not help the jury "determine[e] whether the officers had probable cause or whether they are entitled to qualified immunity" as both are questions of law. *Id.* at 4. Further, Defendants argue that Mr. Allio's opinions on what a "professional, reasonably trained police detective" would want to learn are irrelevant to what practices were "generally accepted" at the time. *Id.* at 4-5.

Mr. Atchison responds that Mr. Allio's opinions will help to establish that the Defendants went beyond negligence or recklessness and had the requisite *mens rea* to be liable under his theories. Dkt. 218 at 6-7. Mr. Atchison

No. 21-cv-286

then cites to *Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013), for the proposition that "testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights."

Defendants argue in their reply that because this Court has already granted a motion for summary judgment on Mr. Atchison's *Monell* claims, "it would be improper for the Court to allow [Mr.] Allio to testify that the City's policies were deficient and the basis for any alleged unconstitutional actions." Dkt. 220 at 5. But this misunderstands the point. Defendants' adherence to and understanding of city policies, in addition to their adherence to and understanding of national police standards, is directly relevant to their state of mind during the investigation of the murder of Mr. Lane. And in any event, Mr. Atchison has provided a new and revised report from Mr. Allio that removes material solely connected to his *Monell* claims. Dkt. 208-2. The Court is satisfied that this cures any prior deficiency.

Mr. Allio's testimony is relevant and will be helpful to the jury. "[I]n constitutional tort cases, expert testimony regarding professional standards can be relevant and helpful." *Murphy v. City of Tulsa*, No. 15-cv-528-GKF-FHM, 2018 WL 468286, at *4 (N.D. Okla. Jan. 18, 2018). If Mr. Allio strays beyond the bounds of his new report or gives other testimony only relevant to the now-dismissed *Monell* claims, Defendants may object to that at trial.

## C

In addition to their overall objections to Mr. Allio's testimony, Defendants further object that none of Mr. Allio's opinions are permissible under Rule 702. Dkt. 209 at 7-9. Defendants rehash most of their points from their

No. 21-cv-286

arguments about Mr. Allio's qualifications as an expert, and these new objections fail for the same reasons. *Id.*[2]

Mr. Allio cites his experience, training, and academic publications in rendering his opinions that Defendants deviated from generally accepted police practices in 1990 and committed intentional or malicious bad acts. Dkt. 209-1 at 5. The bases for Mr. Allio's opinions are distinct from Defendants' characterization that Mr. Allio "personally might have investigated this case differently." Dkt. 209 at 7.

Defendants also dispute the relevance of Mr. Allio's reliance on the 1994 TPD investigative handbook because it was issued four years after the 1990 murder of James Lane. *Id.* at 8. But Mr. Allio's reliance on this handbook is minimal, and he interpreted its relevance based on the deposition of Matt McCord, which stated that the 1994 handbook reflected policies in place in 1990.[3] Dkt. 209-1 at 13.

Defendants argue that this case is like a nearly thirty-year-old case from outside of the Tenth Circuit, *Griffin v. City of Clanton, Ala.*, 932 F. Supp. 1357, 1358 (M.D. Ala. 1996). But *Griffin* is inapposite. *Griffin* excluded a purported expert's opinion because he would not qualify as an expert and because he was offering "a purely legal opinion to assist the court in determining

---

[2] Mr. Atchison argues that Defendants waived their remaining objections to portions of Mr. Allio's testimony by limiting themselves to a few topics when making their arguments. But Defendants specifically argue that "none of [Mr. Allio's] opinions are admissible under rule 702." Dkt. 209 at 7. In any event, this Court's consideration and ruling on issues of Mr. Allio's individual opinions is preliminary and Defendants may still object to Mr. Allio's individual opinions at trial.

[3] Defendants argue that Mr. Allio misrepresented Mr. McCord's statements when interpreting the 1994 handbook's relevance to policies in place in 1990. Dkt. 209 at 8. But Defendants did not provide the Court with Mr. McCord's deposition testimony as an exhibit or direct the Court to where this deposition might be found in the record. Without that, Defendants' argument is better suited for cross-examination.

No. 21-cv-286

the law." *Id.* at 1359 (quotation marks removed). Mr. Allio is qualified as an expert witness, and his proffered opinions are not purely legal.

Defendants last argue that Mr. Allio "fails to identify what the generally accepted practices even were in 1990" and that he did not "apply his training or experience by stating how TPD's practice" deviated from his understanding of generally accepted practices. Dkt. 209 at 9.

Mr. Allio has crossed the threshold on the reliability and bases of all these opinions to give them at trial. Defendants may cross-examine him on these issues to reduce the weight of his testimony in the jury's mind, but the Court will not exclude him or his opinions wholesale from trial. The Court denies Defendants' motion to exclude Mr. Allio's testimony [Dkt. 209].

### III

Mr. Atchison also seeks to exclude some opinions of Defendants' police practices expert, John Ryan. Dkt. 208. He does not dispute that Mr. Ryan is qualified as an expert witness or that Mr. Ryan used a reliable methodology. Rather, Mr. Atchison objects to three parts of Mr. Ryan's testimony. First, Mr. Atchison argues that Mr. Ryan's testimony includes impermissible legal analysis and conclusions. *Id.* at 3. Second, Mr. Atchison argues that the Court should bar Mr. Ryan's testimony because it relates to what fact witnesses may say or recount. *Id.* at 5. Third, Mr. Atchison argues that Mr. Ryan's opinions on the propriety of Tulsa's policies and procedures should be barred. *Id.* at 6. The Court will address each in turn.

### A

Mr. Atchison first objects that much of Mr. Ryan's expert disclosure includes the use of legal terms. *Id.* at 3. The objected-to opinions are characterized as including discussions of legal duties owed by police officers. Expert witnesses may not testify to conclusions of law. *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). But the contents of police training is not a conclusion of law, and

No. 21-cv-286

if police are trained to follow a specific legal standard, an expert may testify to the existence of that training and legal standard as far as it goes to how "conduct was consistent with, or constituted a deviation from, standard police practices and procedures." *Scott v. Tulsa*, 790 F. Supp. 3d, 1299, 1304 (N.D. Okla. 2025).

1

Moving through the objected-to opinions in turn, Mr. Atchison first objects to Mr. Ryan's statement that "[w]hile officers have a duty to disclose exculpatory evidence that they are aware of to the prosecutor before the actual criminal trial commences, law enforcement training has recognized, as have the courts, that officers have no duty to seek out exculpatory evidence or to investigate alibis or defenses." Dkt. 208-1 at 48.

This statement is problematic. Here, Mr. Ryan is discussing explicit legal standards and duties, and although he makes a reference to "law enforcement training," the core of his statement is that officers have a duty to disclose exculpatory evidence but do not have a duty to seek it out. In particular, his statement that "the courts" have "recognized" this duty impermissibly gives legal testimony.[4]

Mr. Ryan is precluded from testifying about the lack of a legal duty to investigate alibis or defenses or any court's recognition thereof. But Mr. Ryan will be permitted to testify about the contents of police officer training on such a duty when discussing how Defendant's "conduct was consistent with, or constituted a deviation from, standard police practices and procedures." *Scott*, 790 F. Supp. at 1304.

---

[4] It may be appropriate to instruct the jury on an officer's legal duty to investigate exculpatory information. The Court will decide how to charge the jury after seeing the parties' proposed instructions and authority in support of the relative positions.

No. 21-cv-286

### 2

Mr. Atchison next objects to Mr. Ryan's statements that "law enforcement only plays a role in the opening segment of the administration of justice" and "[c]itizens, suspects, and criminal defendants are protected by a number of checks and balances to ensure that law enforcement does not become overzealous through the prosecution of individuals" and his ensuing discussion about the procedure of an investigation and what bars need to be cleared before trial. Dkt. 208-1 at 48-50.

These statements do not discuss any duties owed by Defendants, nor do they give any legal conclusions. Rather, they limit themselves to stating the steps during and after a criminal investigation meant to prevent overzealous prosecutions. This is not a legal conclusion, and Mr. Ryan may testify about it.

### 3

Mr. Atchison also objects to Mr. Ryan's statement that "[i]t is well known in law enforcement that once a waiver is obtained to Miranda for an in-custody subject, conduct by officers during an interrogation that leads a person to admit to wrongdoing may be consistent with generally accepted policies, practices, training and legal mandates as long as officers do not cross certain lines to include promises of leniency of charges, no charges, or lighter penalties for the crime suspected." *Id.* at 50.

Here, Mr. Ryan's statement is problematic as to his use of the phrase "legal mandates." *Id.* He purports to give testimony on what is legally required for a confession to be acceptable after a *Miranda* waiver, which the Court will not permit. He may still give testimony about how "generally accepted policies, practices, [and] training" treat conduct by officers in post-waiver interrogations, but not on what "legal mandates" exist. *Id.*

No. 21-cv-286

4

Next, Mr. Atchison objects to Mr. Ryan's statement that "[i]t is well known in law enforcement and officers are trained that there is a distinction between what an officer must establish by way of evidence in order to justify an arrest under the generally accepted practices in law enforcement versus what a prosecutor must establish to bring a case to trial . . . law enforcement understands that the prosecutorial standard for bringing a case to trial is higher than the standard for arrest." *Id.* at 52. Mr. Atchison also objects to Mr. Ryan's discussion of "the legality and reasonableness of the principles behind the *Brady* and *Giglio* cases." *Id.* at 51. Mr. Ryan states that "an intentional act of not turning over exculpatory evidence to the prosecutor by law enforcement[] would be contrary to proper law enforcement practices and the legal mandates trained to officers[.]" *Id.*

In these statements, Mr. Ryan is attempting to testify to a legal conclusion by hiding it within a discussion of practices and training, as opposed to testifying about the training that police officers receive. The Western District of Kentucky recently dealt with Mr. Ryan giving similar testimony about "general definitions of probable cause, *Terry* stops, and the totality of the circumstances test, but prefacing the concepts" by stating that he was only speaking about how officers are trained. *Clark v. Louisville-Jefferson Cnty. Metro Gov't, Kentucky*, No. 317CV00419GNSCHL, 2024 WL 55518, at *6 (W.D. Ky. Jan. 4, 2024). In that case, the court found that Mr. Ryan "can testify about specific police procedures regarding exculpatory or impeachment evidence without expressing legal conclusions." *Id.* This court will follow the Western District of Kentucky's example and preclude Mr. Ryan's general testimony as to these legal principles.

The Court advises Mr. Ryan that he is not to testify to legal principles or conclusions. His expertise is in the field of police practices and procedures, not the law. The Court will instruct the jury on the relevant law.

No. 21-cv-286

## B

Mr. Atchison also objects to Mr. Ryan's recounting of witness testimony and "evidence from Defendants' point of view." Dkt. 208 at 5. Mr. Ryan's expert opinion largely consists of statements summarizing other evidence and witness testimony in Mr. Atchison's original trial, with no analysis on his part of that testimony. Dkt. 208-1.

Defendants state that they "do not intend for [Mr.] Ryan to offer expert testimony as to what the evidence is in this case." Dkt. 217 at 4. Taking that as true, the Court will overrule the objection as moot. If Mr. Ryan attempts to recount evidence at trial, Mr. Atchison may reassert his objection then.

## C

Last, Mr. Atchison objects to Mr. Ryan's opinions about the propriety of Tulsa's policies and procedures as irrelevant due to the dismissal of Mr. Atchison's *Monell* claims. Dkt. 208 at 6. As above, Defendants state that they do not intend to introduce any opinions that are solely relevant to Mr. Atchison's *Monell* claims. Dkt. 217 at 4-5. As such, the Court will overrule the objection as moot. If Mr. Ryan does attempt to give opinions relevant solely to Mr. Atchison's *Monell* claims at trial, Mr. Atchison may reassert his objection then. The Court observes that Mr. Allio intends to testify about these topics as they relate to Defendants' conduct, and will not preclude Mr. Ryan from testifying in response.

## IV

For the reasons stated above, Defendants' motion to bifurcate trial [Dkt. 216] is denied. Defendant's motion to exclude the testimony of Mr. Allio [Dkt. 209] is denied. Mr. Atchison's motion to exclude the testimony of Mr. Ryan [Dkt. 208] is granted as to Mr. Ryan's impermissible legal opinions and denied as moot as to all other relief.

14

No. 21-cv-286

DATED this 6th day of January 2026.

                                                  _____

JOHN D. RUSSELL
*United States District Judge*